UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CARL JAMES FARRELL,                      )
                                          )
                Plaintiff,                )
                                          )
v.                                        )          No. 3:17-cv-425-JRG-HBG
                                          )
NANCY A. BERRYHILL,                      )
Acting Commissioner of Social Security,   )
                                          )
                Defendant.                )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and

Memorandum in Support [Docs. 18 & 19] and Defendant's Motion for Summary Judgment and

Memorandum in Support [Docs. 22 & 23].   Carl James Farrell ("Plaintiff") seeks judicial review

of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant

Nancy A. Berryhill ("the Commissioner").   For the reasons that follow, the Court will

**RECOMMEND** that Plaintiff's motion [Doc. 18] be **GRANTED**, and the Commissioner's

motion [Doc. 22] be **DENIED**.

## I.      PROCEDURAL HISTORY

On August 12, 2013, Plaintiff filed an application for supplemental security income

benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a

period of disability that began on November 2, 2011.   [Tr. 13, 195–207].   After his application was

denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ.   [Tr. 107–

09].   A hearing was held on April 14, 2016.   [Tr. 31–54].   On July 15, 2016, the ALJ issued a

partially favorable decision, finding that Plaintiff was not disabled prior to April 15, 2016, but that Plaintiff was disabled beginning on that date—the date that Plaintiff's age category changed. [Tr. 13–22]. The Appeals Council denied Plaintiff's request for review on July 25, 2017 [Tr. 1–8], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on September 27, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 416.971 *et seq*.).

> 2. Since the alleged onset date of disability, November 2, 2011, the claimant has had the following severe impairments: adhesive capsulitis of the left shoulder, diabetes mellitus (DM), hypertension (HTN), lumbar multilevel facet joint arthropathy and degenerative spurring, inferotemporal quadrantanopia, status-post cerebrovascular disease, obstructive sleep apnea, and obesity (20 CFR 416.920(c)).

> 3. Since the alleged onset date of disability, November 2, 2011, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

> 4. After careful consideration of the entire record, I find that since November 2, 2011, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). The claimant can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. He may never climb ropes, ladders, or scaffolds. He must avoid occupational hazards such as, working at unprotected heights or around dangerous machinery. He is able to do frequent bilateral

2

handling and fingering. He can occasionally raise his arms, bilaterally, over shoulder level. He must avoid tasks of repetitive visual scanning from right to left.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On April 15, 2016, the claimant's age category changed to an individual of advanced age (20 CFR 416.963).

7.  The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 416.968).

9.  Prior to April 15, 2016, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 416.969, and 416.969(a)).

10.  Beginning on April 15, 2016, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 416.960(c) and 416.966).

11.  The claimant was not disabled prior to April 15, 2016 but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 416.920(g)).

[Tr. 15–21].

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and

whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

4

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

5

146 (1987)).

## V. ANALYSIS

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence in three regards. First, Plaintiff claims that the ALJ failed to follow the treating physician rule when evaluating the opinion of Plaintiff's treating physician, Samuel J. Olsen, M.D., in assessing Plaintiff's RFC. [Doc. 19 p. 8–13]. Next, Plaintiff asserts that the ALJ failed to properly evaluate his allegations of fatigue in the RFC determination. [*Id.* at 13–15]. Lastly, Plaintiff claims that the ALJ failed to consider the proper Listing when evaluating Plaintiff's vision impairment, as the ALJ did not consider Listing 2.03. [*Id.* at 15–17]. The Court will address each allegation of error in turn.

### A. Treating Physician Rule

Plaintiff claims that the ALJ failed to weigh Dr. Olsen's opinion in accordance with the treating physician rule, as the ALJ did not identify how Dr. Olsen's opinion was inconsistent with Plaintiff's activities of daily living or how the opinion was conclusory. However, the Commissioner asserts that the ALJ properly noted how Dr. Olsen's opinion was inconsistent with the other evidence of record.

The record indicates that Dr. Olsen served as Plaintiff's treating physician beginning on October 1, 2013. [Tr. 500, 541]. Dr. Olsen completed a medical source statement on January 5, 2015. [Tr. 581–85]. First, Dr. Olsen detailed that Plaintiff suffered from visual loss resulting from his stroke, memory impairment, and impaired joint and spine mobility. [Tr. 581]. Additionally, Dr. Olsen opined that Plaintiff could frequently lift one to five pounds, occasionally lift six to ten pounds, and could never lift more than eleven pounds in the average workday. [*Id.*]. Further, Dr. Olsen opined that Plaintiff could frequently use his hands for fine and gross manipulation and

6

could occasionally raise his left and right arms over his shoulder in a work environment on a full-time basis. [*Id.*]. Lastly, Dr. Olsen stated that Plaintiff would need to elevate his legs for twenty minutes three times a day due to his pain, had a reasonable medical need to lie down due to his impairments for twenty minutes three times a day, and would need to take unscheduled break periods during an eight-hour work day beyond the normal allotted break periods. [Tr. 582].

When assessing Plaintiff's psychiatric limitations, Dr. Olsen opined that Plaintiff was markedly impaired with respect to the ability to work with others; moderately impaired with respect to the ability to understand, remember and carry out detailed instructions, maintain attention and concentration, interact appropriately with the general public, and to accept supervision; and not significantly impaired with respect to the ability to understand, remember and carry out very short and simple instructions and to get along with coworkers. [Tr. 585]. Lastly, Dr. Olsen noted other "co-morbidities that affect [Plaintiff's] ability to work," including morbid obesity, obstructive sleep apnea, nonalcoholic steatohepatitis, ventral hernia, chronic lower back pain, uncontrolled diabetes, and a hypercoagulable state. [*Id.*].

In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[1] However, the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

---

[1] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

7

evidence in [the] case record." *Id.* If the opinion is not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source," as well as "other factors." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527).

The ALJ is not required to explain how he considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

The ALJ assigned little weight to Dr. Olsen's opinion, stating that:

> The opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. There is no evidence in the medical record to substantiate that the claimant would need to elevate his legs or miss work. Furthermore, these limitations are inconsistent with the claimant's own testimony. He states that he is able to perform activities of daily living, he can get along with others, and has the ability to focus, despite having complications from a stroke . . . . The doctor's opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive. However, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he sympathizes for one reason or another.

[Tr. 20].

At the outset, the Court cautions against the language used by the ALJ suggesting possible bias on the part of Dr. Olsen, as "[s]uch a critique is not a 'good reason' for discounting a treating

8

physician's opinion where the possibility of bias is not supported by any specific evidence in the record." *Price v. Comm'r of Soc. Sec.*, No. 3:13-cv-394, 2015 WL 93644, at *5 (S.D. Ohio Jan. 7, 2015), *report and recommendation adopted by*, 2015 WL 1402587 (S.D. Ohio Mar. 25, 2015); *see, e.g.*, *Henry v. Astrue*, No. 09-373-GWU, 2011 WL 676920, at *5 (E.D. Ky. Feb. 16, 2011). However, despite the improper suggestion of bias, the ALJ's assignment of less than controlling weight to the opinion of a treating physician may still be upheld if the other listed reasons are supported by substantial evidence. *See Daniel v. Comm'r of Soc. Sec.*, 527 F. App'x 374, 375 (6th Cir. 2013) ("However, even with the possible sympathy removed from the analysis, there is other substantial evidence to support the ALJ's decision on the treating physician's credibility."); *Sito v. Comm'r of Soc. Sec.*, No. 3:17-cv-1979, 2018 WL 4179457, at *26 (N.D. Ohio Aug. 31, 2018) ("While the Court finds this type of reasoning misguided and speculative, the ALJ did provide other 'good reasons' to support the rejection of [the treating physician's] opinion which are supported by substantial evidence.").

The ALJ noted that the limitations assessed by Dr. Olsen "are inconsistent with [Plaintiff's] own testimony," as "[h]e states that he is able to perform activities of daily living, he can get along with others, and has the ability to focus despite having complications from a stroke." [Tr. 20]. However, the ALJ failed to explain which limitations assessed by Dr. Olsen are in conflict with Plaintiff's reported daily activities. *See Brooks v. Social Sec. Admin.*, 430 F. App'x 468, 480 (6th Cir. 2011) ("The ALJ did not explain *how* Brooks's daily activities directly refuted [her treating physician's] stated limitations."). The ALJ detailed that Plaintiff stated that he is able to perform activities of daily living, can get along with others, and has the ability to focus. [Tr. 20]. Additionally, the ALJ previously discussed that Plaintiff testified that he could care for his grandchildren by getting them up for school, as well as dropping off and picking up his youngest

9

grandchild, and performing household chores. [Tr. 19].

However, the ALJ failed to distinguish how Dr. Olsen's opinion was inconsistent with Plaintiff's testimony regarding his activities of daily living. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) ("Although not clearly stated, the apparent implication is that these activities are inconsistent with the social and daily living restrictions noted in [the treating physician's] opinions."). For example, while Plaintiff testified at the disability hearing that he attempts to perform normal household chores [Tr. 40], he also testified that he is only able to prepare a meal or wash dishes for fifteen to twenty minutes at a time until his back begins to get stiff [Tr. 42–43]. Ultimately, the Court cannot discern how the reported daily activities conflicted with the assessed limitations. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, No. 1:17-cv-49, 2018 WL 705388, at *14 (S.D. Ohio Feb. 5, 2018) ("It was not enough for the ALJ to give the treating psychiatrists' opinions reduced weight on this basis without explaining the perceived inconsistency between plaintiff's daily activities and their opinions."), *report and recommendation adopted by*, 2018 WL 1322232 (S.D. Ohio Mar. 13, 2018).

Next, the ALJ stated that she assigned little weight to Dr. Olsen's opinion, as his "opinion is without substantial support from the other evidence of record." [Tr. 20]. While the ALJ previously detailed the opinions of Dr. Carolyn Parrish, M.D. and Reeta Misra, M.D., the nonexamining state agency consultants, as well as the opinion of consultative examiner Stephen Goewey, M.D., "[m]aking generic references to the records of specialists who expressed mixed opinions neither identifies an 'inconsistency with the record as a whole' nor an inconsistency with that opposing physician's views in particular." *Cross v. Comm'r of Soc. Sec.*, No. 5:17-cv-1888, 2018 WL 3216056, at *16 (N.D. Ohio June 13, 2018), *report and recommendation adopted by*, 2018 WL 3208173 (N.D. Ohio June 29, 2018); *see, e.g.*, *Blackburn v. Colvin*, No. 5:12-CV-2355,

10

2013 WL 3967282 at * 7 (N.D. Ohio July 31, 2013) (holding an ALJ's recitation of the medical evidence "does not cure the failure to offer any meaningful analysis as to why the opinions of treating physicians were rejected").

Here, the ALJ did not discuss how Dr. Olsen's opinion was conflicted by the other medical opinions or specific medical evidence in the record as a whole. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376–77 (6th Cir. 2013) (holding the ALJ did not provide "good reasons" for not providing controlling weight to the treating physician's opinions, as "the conclusion that Dr. Onady's opinions 'are not well-supported by any objective findings' is ambiguous" and "the ALJ does not identify the substantial evidence that is purportedly inconsistent with Dr. Onady's opinions").

Dr. Goewey consultatively examined Plaintiff on December 3, 2013, and assessed Plaintiff had suffered a stroke with hemianopsia noted, a right homonymous quadrantanopia, incisional hernia with status post colon resection, obstructive sleep apnea, and rheumatoid arthritis. [Tr. 527, 530]. Therefore, Dr. Goewey opined that Plaintiff could sit between two to four hours daily, stand and walk between three to four hours daily, and could lift and carry ten to twenty pounds occasionally. [Tr. 530]. However, the ALJ assigned little weight to Dr. Goewey's opinion, as it was "overly broad, provides very little explanation of the evidence relied on in forming that opinion, and is inconsistent with [Plaintiff's] physical examination findings, objective imaging, and with [Plaintiff's] reported activities of daily living." [Tr. 19].

On March 28, 2014, at the initial level of the agency's review, Dr. Parrish opined that Plaintiff is able to do light work, but could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, and could occasionally balance, stoop, kneel, crouch, and crawl. [Tr. 71–72, 77]. Further, Dr. Parrish opined that Plaintiff had a limited range of vision in

11

both eyes and should avoid exposure to hazards and unprotected heights. [Tr. 72–73]. Additionally, Dr. Parrish stated that Plaintiff could stand or walk with normal breaks, as well as sit, for six hours of an eight-hour workday. [Tr. 72]. Dr. Misra subsequently affirmed Dr. Parrish's opinion at the reconsideration level. [Tr. 91–93].

The ALJ gave significant weight to the opinions of the nonexamining state agency medical consultants, as they are "consistent with the medical evidence and provide accurate functional limitations supported by objective medical evidence." [Tr. 19]. Additionally, the ALJ detailed how Plaintiff has degenerative changes in his shoulder and arthritis in his spine, thus supporting the postural limitations in Dr. Parrish and Dr. Misra's opinions. [*Id.*]. Further, the ALJ discussed how Plaintiff's impaired vision supports the limitations assessed in these opinions. [*Id.*].

Although Dr. Olsen's opinion was more restrictive, the ALJ failed to identify how the opinions of the non-examining state agency consultants were more consistent with the record or conflicted with the opinion of Plaintiff's treating physician. While the ALJ discussed how Plaintiff's impairments support the limitations assessed by Dr. Parrish and Dr. Misra, the ALJ did not detail how their opinions were in conflict with the opinion of Plaintiff's treating physician, Dr. Olsen. *See, e.g.*, *Gayheart*, 710 F.3d at 377 ("Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion.").

Therefore, without identifying the inconsistent evidence in the record, solely stating that Dr. Olsen's opinion "is without substantial support from the other evidence of record," does not constitute a good reason for assigning little weight to Dr. Olsen's opinion. [Tr. 20]; *see Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to

12

dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick."); *Wilson v. Berryhill*, No. 3:16-CV-95, 2017 WL 2790186, at *5 (E.D. Tenn. June 27, 2017) ("The ALJ does not identify with specificity any treatment records, examining findings, diagnostic studies, or other evidence that specifically undermines Dr. Laman's opinions. While the ALJ discussed the medical evidence of record in general, the Court is unable to determine how the ALJ arrived at his conclusion . . . .").

Accordingly, the Court finds that the ALJ failed to set forth "good reasons" for rejecting the limitations assessed by Plaintiff's treating physician. While the ALJ claimed that Dr. Olsen's opinion was conclusory, and that there was no evidence in the medical record that Plaintiff would need to elevate his legs or miss work on a regular basis, the ALJ improperly stated that Dr. Olsen was not objective and failed to sufficiently detail how the opinion was inconsistent with the medical record or Plaintiff's reported daily activities. *See, e.g.*, *Brooks v. Soc. Sec. Admin.*, 430 F. App'x 468, 481 (6th Cir. 2011) (holding the ALJ failed to "present *good* reasons," *id.* at 483, where, "[o]f the four 'good reasons' that the ALJ can be understood to have offered for his decision . . . ., two are not supported by the record" and "[a]nother, although technically supported by the record is not a legitimate rationale"); *Carney v. Berryhill*, No. 1:16-cv-2136, 2017 WL 2791104, at *12–13 (N.D. Ohio June 9, 2017) (holding ALJ failed to provide good reasons for assigning little weight to a treating physician's opinion, as the ALJ failed to demonstrate how the opinion was inconsistent with the medical record as a whole, ignored "evidence that could support the limitations to which Dr. Gross opined," and improperly speculated that "the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes"), *report and recommendation adopted by*, 2017 WL 2779019 (N.D. Ohio, June 27,

13

2017).

The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Blakley v. Comm'r of Social Sec.,* 581 F.3d 399, 407 (6th Cir. 2009) (emphasis in the original) (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007)). Therefore, the Court recommends that the case should be remanded for a more appropriate explanation in accordance with the cases cited above as to why the ALJ gave the treating physician's opinion in this case little weight.

The Court further concludes that the ALJ's failure to provide good reasons for rejecting the opinion of Dr. Olsen does not constitute harmless error. Harmless error occurs: (1) if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of the procedural safeguard of the good reasons rule even though an ALJ has not complied with the express terms of the regulation. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). However, the Court finds that the ALJ's failure to explain adequately why she discounted the opinion of Plaintiff's treating physician "hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (referencing 20 C.F.R. § 404.1527(c)(2)).

## B.      Fatigue

Plaintiff also contends that the ALJ improperly failed to consider his symptoms of fatigue when determining his RFC. [Doc. 19 p. 13–15.] However, the Commissioner asserts that the ALJ considered Plaintiff's subjective symptoms as a result of his combination of severe and non-severe

14

impairments, as well as his reports of daytime somnolence. [Doc. 23 p. 18–19].

With regard to cases in which a Plaintiff claims that symptoms of the underlying conditions are the claimed cause of disability, the Sixth Circuit has offered additional guidance relative to assessing credibility and subjective complaints:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*
>
> Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions. *Id.; see also* Soc. Sec. Rul. 96–7p, 1996 WL 374186, at *2–3 (July 2, 1996).

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

At Step Three of the disability decision, the ALJ found that Plaintiff did not meet or equal the requirements for Listing 14.09, assessing that Plaintiff has not had repeated manifestations of inflammatory arthritis with severe fatigue as one of at least two symptoms. [Tr. 16]. When considering Plaintiff's symptoms, the ALJ examined Plaintiff's testimony that he was forced to stop work due to having a stroke which resulted in loss of vision, as well as chronic back pain. [Tr. 17]. Additionally, the ALJ reviewed Plaintiff's daily activities, in that he could perform simple chores around the house, and take care of his wife and two minor grandchildren. [*Id.*].

15

Subsequently, in the RFC determination, the ALJ detailed that Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms; but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully supported. [Tr. 18].

However, the ALJ failed to mention the effects of Plaintiff's fatigue when determining his RFC, despite Plaintiff's complaints of fatigue being well documented in the record. Plaintiff testified during the disability hearing that the inability to properly digest food results in fatigue, with fatigue also as a symptom for his diabetes and a side effect for several prescribed medications. [Tr. 37]. Additionally, Plaintiff stated that after any physical exertion over fifteen to twenty minutes, his "fatigue sets in." [Tr. 43]. The ALJ solely considered Plaintiff's reports of daytime somnolence when addressing Plaintiff's history of sleep apnea. [Tr. 19].

Ultimately, the ALJ's failure to consider Plaintiff's reports of fatigue as a symptom causing his disability constitutes an additional basis for remand. Plaintiff's treatment notes with Dr. Olsen demonstrate repeated symptoms of fatigue [Tr. 583], as well as the treatment for severe impairments which Plaintiff testified that fatigue was a common syndrome. Dr. Parish and Dr. Misra noted that Plaintiff should avoid exposure to heights and hazards due to ongoing daytime somnolence. [Tr. 74, 89], but also stated that Plaintiff claimed that he gets tired easily and can only walk 200 yards before resting two-to-three minutes [Tr. 75, 90]. Dr. Olsen opined that Plaintiff would be required to take frequent unscheduled breaks throughout the work day. [Tr. 582]. However, the ALJ failed to examine the effect of Plaintiff's fatigue on his ability to perform basic work activities. *See Bryant v. Astrue*, No. 09-CV-10318, 2010 WL 681285, at * 8 (E.D. Mich. Feb. 23, 2010) ("First, the ALJ did not specifically mention Plaintiff's claims of fatigue" in finding Plaintiff's symptoms were not credible, and "the ALJ's recitation of Plaintiff's [daily]

16

activities does not mention the level of activity to which Plaintiff [ ] reported he engages in each of these [daily] activities.").

Additionally, the ALJ failed to include a limitation due to the effect of Plaintiff's fatigue or explain how her consideration of Plaintiff's fatigue did not warrant a limitation. *See Hill v. Comm'r of Soc. Sec.*, No. 12-13222, 2014 WL 632773, at *12 (E.D. Mich. Feb. 18, 2014) (holding the ALJ failed to properly evaluate the opinion of an examining consultant, as the ALJ did not explain why he didn't incorporate a recommended hourly break due to fatigue in the RFC determination); *see, e.g.*, *Lopez v. Berryhill*, 340 F. Supp. 3d 696, 701 (N.D. Ill. 2018) ("One might suppose that when the ALJ said she 'address[ed] claims of fatigue' with her RFC, she meant the elimination of unprotected heights and moving mechanical parts. But, that would only be speculation."). Therefore, the ALJ did not properly consider Plaintiff's fatigue when determining his RFC.

Accordingly, given the Court's recommendation that Plaintiff's case be remanded for a determination of his RFC and re-evaluation of the opinion of Plaintiff's treating physician, the Court also recommends that, on remand, the ALJ should properly consider the effects of Plaintiff's fatigue in the RFC determination. *See, e.g.*, *Mitchell v. Colvin*, No. 11:CV-50015, 2014 WL 4680848, at *10 (N.D. Ill. Sept. 19, 2014) ("The Court need not determine whether the ALJ's lack of explicit discussion about any limitations imposed by Mr. Mitchell's obesity, mental conditions, and fatigue by itself warrants a remand because the case is already being remanded for failure to address the weight due the report of Mr. Mitchell's treating physician."). If the ALJ subsequently finds that Plaintiff's complaints of fatigue are not credible, she should explain this conclusion.

C.     Listing 2.03

Plaintiff asserts that the ALJ failed to properly consider whether his visual impairments

17

met the requirements of Listing 2.03.  [Doc. 19 p. 15–17].  Further, Plaintiff contends that expert testimony was necessary to determine whether Plaintiff met the requirements of the Listing.  [*Id.* at 16].  However, the Commissioner responds that Plaintiff failed to establish that his visual impairments could meet or equal Listing 2.03.  [Doc. 23 p. 4–9].

At Step Three of the sequential evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings because they "describe conditions 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'"  *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 433 (6th Cir. 2016) (quoting 20 C.F.R. § 416.925(a)).  Each listing, including Listing 2.03, "describes an impairment in terms of its medical criteria—its signs, symptoms, and diagnostic indicators."  *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  Plaintiff bears the burden of proving every element of a listing.  *Id.*; *see, e.g.*, *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  "Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings, rather than a judgment based on all relevant factors for an individual claimant, the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation."  *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing 20 C.F.R. §§ 416.925(d), 416.926; *Sullivan*, 493 U.S. at 532).

Neither the listings nor the Sixth Circuit require the ALJ to "address every listing" or "to discuss listings that the applicant clearly does not meet."  *Sheeks v. Comm'r of Soc. Sec.,* 544 F. App'x 639, 641 (6th Cir. 2013); *see, e.g.*, *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014).  The ALJ should analyze a relevant listing where the record raises "a substantial question as to whether [the claimant] could qualify as disabled" under a listing.  *Abbott*

18

*v. Sullivan,* 905 F.2d 918, 925 (6th Cir. 1990); *see also Smith-Johnson*, 579 F. App'x at 432.

Listings 2.02 and 2.03 provide that:

2.02. *Loss of central visual acuity.* Remaining vision in the better eye after best correction is 20/200 or less.

2.03. *Contraction of the visual field in the better eye*, with:

> A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees; OR
>
> B. [A] [mean deviation] of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field (see 2.00A6d); OR
>
> C. A visual field efficiency of 20 percent or less, determined by kinetic perimetry (see 2.00A7c).

20 C.F.R. § 404, Subpt. P, App. 1, §§ 2.02, 2.03. Here, the ALJ found that Plaintiff did not meet Listing 2.02 "because his remaining vision in the better eye after best correction is not 20/200 or less." [Tr. 16].

Plaintiff claims that his partial vision loss and diagnosis of quadrantanopia should have resulted in the ALJ evaluating whether his visual impairments met Listing 2.03. [Doc. 19 p. 16]. The ALJ detailed that Plaintiff "lost vision in the lower corners of his eyes," and "[i]n December 2013, [Plaintiff's] vision was documented at 20/40 in both eyes without glasses . . . However, [Plaintiff] still had a 25 percent loss of his crosshair vision." [Tr. 18]. Accordingly, the ALJ incorporated limitations from repetitive visual scanning from right to left to account for Plaintiff's blind spots as a result of his loss of vision. [*Id.*].

It is reversible error for an ALJ to fail to address a listing only if Plaintiff can show the record raises a "substantial question" as to whether his impairments met or medically equaled the severity of the listing. *See Smith-Johnson*, 579 F. App'x at 432 (citing *Sheeks*, 544 F. App'x at

19

642; *Abbot*, 905 F.2d at 925).  However, Plaintiff solely states that his visual impairments may meet Listing 2.03, as "[w]ith a 25% loss in his field of vision, it is at least possible that Plaintiff meets this Listing."  [Doc. 19 p. 16]; *see, e.g.*, *Mosley v. Berryhill*, No. 1:13–0055, 2017 WL 1153896, at *5 (M.D. Tenn. Mar. 28, 2017) ("Notably, Plaintiff does not argue that his condition actually meets the criteria in either Listing 2.03 or 2.04, but instead contends that the ALJ erred by failing to consider such listings. This is significant because it is the claimant's burden to demonstrate, through medical evidence, that his impairments meet *all* of the specified medical criteria contained in a particular listing.") (internal citation and quotation marks omitted).

Therefore, the Court finds that Plaintiff has failed to establish that he met or equaled the requirements of Listing 2.03.  *See Smith–Johnson*, 579 F. App'x at 432–33 (holding that if a claimant fails to "point to specific evidence that demonstrates he reasonably could meet or equal every requirement of [a] listing," then "the ALJ does not commit reversible error by failing to evaluate a listing at Step Three").  First, no medical opinion found that Plaintiff's visual impairments met or equaled the severity of Listing 2.03.  Also, the nonexamining state agency consultants did not find that Plaintiff's visual impairments met or equaled Listing 2.03.  Additionally, the ALJ discussed how Plaintiff testified that he was still able to operate a motor vehicle and enjoys reading, and only incorporated limitations on climbing ropes, ladders, or scaffolds, as well avoiding occupational hazards and repetitive visual scanning from right to left to account for Plaintiff's visual impairments.  [Tr. 18]; *see, e.g.*, *Waterman v. Comm'r of Soc. Sec.*, No. 2:16-cv-059, 2017 WL 393093, at *5 (S.D. Ohio Jan. 30, 2017) ("Given the ALJ's findings that the impact of Plaintiff's visual impairments was certain restrictions in her ability to concentrate and to read fine print . . . there is no reasonable likelihood that the ALJ would have found these same symptoms to be the equivalent of any section of the Listing."), *report and*

20

*recommendation adopted by*, 2017 WL 821687 (S.D. Ohio Mar. 02, 2017).

Accordingly, to the extent that the ALJ committed error by failing to explicitly identify and evaluate Listings 2.03 with respect to Plaintiff's visual impairments, the Court finds that such error was harmless.

## V.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[2] Plaintiff's Motion for Judgment on the Pleadings [**Doc. 18**] be **GRANTED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] be **DENIED** for the reasons stated herein. The Court **RECOMMENDS** the matter remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings consistent with this Report & Recommendation.

Respectfully Submitted,

United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

21